AO 91 (Rev. 11/11)  Criminal Complaint                     REI  12/19/14

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
DEC 1 9 2014
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| BELISARIO MORENO RAMIREZ, aka GERARDO ORTIZ RAMIREZ | ) ) | Case No.  H14-1214M |
| ISRAEL LARA AVILA, aka JORGE CAMACHO GUITERREZ | ) ) ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 18, 2014__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 | Conspiracy |
| 18 USC 544 | Smuggling Goods From The United States |
| 18 USC 922(g)(5) | Illegal Alien In Possession of a Firearm |

This criminal complaint is based on these facts:

See Attachment for Criminal Complaint

☑ Continued on the attached sheet.

_____
Complainant's signature

Randall Hilding, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: __12/19/2014__

_____
Judge's signature

City and state: __Houston, Texas__     Magistrate Judge George C. Hanks, Jr.
Printed name and title

ATTACHMENT TO CRIMINAL COMPLAINT

I, Randall Hilding, being duly sworn, depose and state the following:

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) under Immigration and Customs Enforcement (ICE), currently assigned to the HSI office in Houston, Texas. I have been employed by HSI/ICE, and the former United States Customs Service, for the past 27 years as a criminal investigator. During this time I have investigated various violations of Federal criminal law, including the smuggling of firearms, technology and narcotics and the laundering of proceeds from the smuggling, sale and distribution firearms, technology and narcotics.

2. I have received courses of instruction from ICE and the Department of the Treasury, relative to investigative procedures, Criminal Law, Rules of Evidence and Federal Procedures. I have conducted and participated in criminal investigations involving the seizure of merchandise, contraband and documents, which have resulted in the arrest, indictment and conviction of violators.

3. I believe there is probable cause to believe that Belisario Moreno RAMIREZ, aka Gerardo Ortiz Ramirez and Israel Lara AVILA, did knowingly and willfully agree together, and with other persons known and unknown to commit offenses against the United States, that is: to knowingly possess, ship/transport, or receive any firearm, and fraudulently and knowingly export, sell, or send from the United States, or attempt to export or send from the United States, and knowingly receive, conceal, buy, or sell firearms in a manner that facilitated the transportation, concealment, or sale of such firearms prior to exportation, knowing the same to be intended for exportation from the United States to Mexico, in violation Title 18, United States Code, Sections 371 and 554. Furthermore, I believe there is probable cause to believe that Belisario Moreno RAMIREZ, aka Gerardo Ortiz Ramirez and Israel Lara AVILA, were both illegal aliens who knowingly possessed firearms in violation Title 18, United States Code, Section 922(g)(5). This affidavit is based on my personal observations, knowledge, experience, and training, and information related to me by other sworn law enforcement officers. The facts set forth in this affidavit are not the only facts known to your Affiant, they are only facts set forth by your Affiant for the limited purpose of establishing probable cause for arrest.

4. On December 11, 2014 a confidential source of information relayed information to SA Hilding that an individual in Houston, Texas, utilizing wireless telephone number (678) 640-4896 (target telephone), was in possession of a cache of firearms that he needed smuggled to Mexico. On December 12, 2014, a HSI undercover agent (UCA1) contacted the target telephone and verified a Hispanic male utilizing the target telephone, later identified as RAMIREZ, was in fact in possession of approximately ten (10) rifles, which he indicated were an AK-47 assault rifle and AR-15 assault rifles that he needed transported to Mexico. UCA1 told RAMIREZ that UCA1's vehicle with a hidden compartment was on a trip at the present time and would not be available to accommodate RAMIREZ's

requested trip for the firearms to Mexico until the week of December 15, 2014. RAMIREZ told UCA1 that he would be ready next week. UCA1 informed RAMIREZ the rifles needed to be disassembled in order to fit in the hidden compartment, to which RAMIREZ replied he also had two (2) "carbines" and inquired to UCA1 how to disassemble these rifles. RAMIREZ also told UCA1 that he had the ten (10) rifles "wrapped up" and ready to be transported to Mexico.

5. On December 16, 2014 a second HSI undercover agent (UCA2) contacted RAMIREZ and informed him that UCA2 was the driver of the vehicle with the hidden compartment, and it would be ready to pick up the firearms on December 18, 2014. RAMIREZ indicated he was ready and that the firearms needed to be shipped to Morelia, Michoacán, Mexico. GERARDO further indicated he was going to pay UCA2 one thousand dollars ($1,000.00) to take the firearms to Mexico, which he indicated were going to an "auto defense" group in Mexico. Your affiant knows the "auto defense" groups in Mexico are a vigilante group of heavily armed Mexican citizens who frequently clash with Mexican law enforcement officials and drug cartel forces in Mexico.

6. On December 18, 2014 UCA2 met RAMIREZ and AVILA at the Taco Cabana Restaurant, located at 7501 Bellaire Blvd, Houston, Texas. While at the Taco Cabana, UCA2 showed RAMIREZ and AVILA the HSI undercover vehicle (a 2004 Nissan 350 Z) with the hidden compartment, and specifically the open and empty hidden compartment which was built into the body of the vehicle in the rear cargo area of the vehicle. UCA2 instructed RAMIREZ and AVILA to place the firearms in the open hidden compartment in the vehicle and any firearms that did not fit in the compartment, could be placed in the rear cargo area, as UCA2 informed RAMIREZ and AVILA, UCA2 also had another vehicle with a hidden compartment to accommodate any firearms that did not fit in the first hidden compartment. RAMIREZ then entered the HSI undercover vehicle and departed the Taco Cabana, followed by AVILA in the vehicle they both arrived in at the Taco Cabana. RAMIREZ and AVILA told UCA2 they would be gone for approximately one hour before returning with the rifles that were to be smuggled to Mexico.

7. Law enforcement surveillance units followed RAMIREZ and AVILA as they drove in tandem from the Taco Cabana to a residence identified as 10110 Limewood Lane, Sugarland, Texas. Prior to arriving at the Limewood residence, AVILA parked the vehicle he was driving at a retail center parking lot and joined RAMIREZ in the HSI undercover vehicle. When they arrived at the Limewood residence, RAMIREZ backed the HSI vehicle into the garage and closed the garage door. Approximately forty-five minutes later, the HSI vehicle, driven by RAMIREZ with AVILA as a passenger, departed the Limewood residence. While driving through the neighborhood, in route back to the vehicle driven by AVILA, they stopped the HSI vehicle at a stop sign. Both RAMIREZ and AVILA exited the HSI vehicle and opened the rear access of the HSI vehicle and appeared to be repositioning the contents of the rear cargo area of the HSI undercover vehicle. After this brief stop they continued back to the vehicle driven by AVILA, and both vehicles were followed in tandem back to the Taco Cabana.

8. After arriving at the Taco Cabana, RAMIREZ and AVILA were met by UCA2. RAMIREZ, AVILA and the UCA2 opened the rear access of the HSI undercover vehicle and viewed the riffles in the hidden compartment and rear cargo of the vehicle. After completing the inspection, RAMIREZ, AVILA and UCA2 talked briefly between the vehicles in the parking lot, and RAMIREZ gave UCA2 one thousand dollars ($1,000.00) which was a partial fee for the transportation of the firearms from the United States to Mexico. UCA2 then walked into the Taco Cabana and RAMIREZ and AVILA entered their vehicle. They were then placed under arrest by law enforcement officers. An inspection of the vehicle utilized by RAMIREZ and AVILA resulted in the discovery of a loaded Glock 40 caliber pistol and an additional loaded magazine for the Glock pistol readily accessible in the front seat area of the vehicle. A NCIC check of the Glock pistol identified it as stolen in 2011, with the Houston Police Department as the reporting agency. An inspection of the HSI undercover vehicle resulted in the discovery of 10 firearms which included two shotguns, eight assault rifles and approximately thirty-two high capacity magazines for the assault rifles. The firearms and magazines were found in the hidden compartment and rear cargo area of the HSI undercover vehicle. RAMIREZ also possessed two cellular telephones at the time of his arrest, one of which operated under the telephone number (678) 640-4896. This was the target telephone called by both UCA1 and UCA2 to communicate with RAMIREZ about the firearms he possessed.

9. An Immigration check on Belisario Moreno RAMIREZ and Israel Lara AVILA revealed that both individuals are citizens of the United Mexican States and illegally present in the United States.

Based on the facts and circumstances outlined above, there is probable cause to believe that on December 18, 2014, in the Southern District of Texas, Houston Division, and elsewhere, Belisario Moreno RAMIREZ and Israel Lara AVILA did knowingly and unlawfully, possess, ship/transport, or receive any firearm, and export, sell, or send from the United States, or attempt to export or send from the United States, and knowingly receive, conceal, buy, or sell firearms in a manner that facilitated the transportation, concealment, or sale of such firearms prior to exportation, knowing the same to be intended for exportation from the United States to Mexico, in violation Title 18, United States Code, Sections 371, 554 and 922.

Randall Hilding
Special Agent
Homeland Security Investigations

SWORN TO AND SUBSCRIBED BEFORE ME this 19th day of December 2014, and I find probable cause.

George C. Hanks, Jr.
United States Magistrate Judge